UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 18-1916

---

UNITED STATES OF AMERICA,
Appellee,

v.

VAUGHN LEWIS,
Defendant-Appellant.

---

# Memorandum Amicus Curiae of the Office of the Federal Public Defender for the Districts of Massachusetts, New Hampshire, and Rhode Island and the Massachusetts Association of Criminal Defense Lawyers in Support of Appellant's Petition for Rehearing En Banc Pursuant to Federal Rule of Appellate Procedure 35

Judith H. Mizner (No. 11056)
Assistant Federal Public Defender
Office of the Federal Public Defender
51 Sleeper St., 5th Floor
Boston, MA 02210
(617) 223-8061

Davina T. Chen (No. 1195083)
National Sentencing Resource Counsel
321 East Second Street
Los Angeles, CA 90012
(213) 393-3079

# TABLE OF CONTENTS


Statement of the Interest of the Amici and Authority to File and Statement Pursuant to F.R.A.P. Rule 29(a)(4)(E) .......... 6

Introduction .......... 7

Argument .......... 8

A. The Career Offender Guideline Has Long Been Recognized as Problematic .......... 8

1. The impact of a career offender determination is severe. .......... 9

2. The severity of the career offender guideline does not advance the purposes of sentencing. .......... 12

3. The career offender guideline has an unwarranted adverse impact on Black defendants. .......... 15

B. The Sentencing Commission Itself Has Called for Reform. .......... 18

C. It is Exceptionally Important that Courts Not Interpret the Career Offender Guideline More Broadly than Required. .......... 19

Certificate of Compliance with Type-Volume Limit, .......... 22

Type-Face Requirements, and Type-Style Requirements .......... 22

# TABLE OF AUTHORITIES

Page(s)

## Federal Cases

*Peugh v. United States*,
569 U.S. 530 (2013) ........ 11, 12

*United States v. Knox*,
573 F.3d 441 (7th Cir. 2009) ........ 20

*United States v. Piper*,
35 F.3d 611 (1st Cir. 1994) ........ 0

## State Cases

*Com. v. Warren*,
58 N.E.3d 333 (Mass. 2016) ........ 16

## Federal Statutes

21 U.S.C. § 846 ........ 20

28 U.S.C. § 994(h) ........ 9, 18, 20

Controlled Substance Act § 401 ........ 20

Controlled Substance Act § 406 ........ 20

Fair Sentencing Act of 2010, Pub. L. No. 111-220, § 2, 124
Stat. 2372, 2372 (2010) ........ 17

U.S.S.G. § 2D1.1(a)(5) ........ 10

U.S.S.G. § 3B1.2 ........ 10

U.S.S.G. § 4A1.2 ........ 13

U.S.S.G. § 4A1.3(b)(3)(A) ........ 10, 11

U.S.S.G. § 4B1.1 .................................................................... 9, 10

**Rules**

Fed. R. App. P. 35(a)(2) .................................................................... 7

**Other Authorities**

Eric P. Baumer, *Reassessing and Redirecting Research on Race and Sentencing*.................................................................... 18

Mass. Sent'g Comm'n, *Survey of Superior Court Sentencing Practices FY2018* (2019), https://bit.ly/2DkSZr1 .............................. 17

Natl. Res. Council, *The Growth of Incarceration in the United States, Exploring Causes and Consequences* 60 (2014).................................................................... 17

Paul J. Hofer & Mark H. Allenbaugh, *The Reason Behind the Rules: Finding and Using the Philosophy of the Federal Sentencing Guidelines*, 40 Am. Crim. L. Rev. 19, 49-50 (2003).................................................................... 14

U.S. Census Bureau, *QuickFacts Massachusetts*, https://www.census.gov/quickfacts/MA (last visited July 7, 2020).................................................................... 18

U.S.S.C., *Report to Congress: Career Offender Sentencing Enhancements* (2016) ............................................ 9, 13, 18, 19

U.S.S.C., *Fifteen Years of Guidelines Sentencing: An Assessment of How Well the Federal Criminal Justice System is Achieving the Goals of Sentencing Reform* 131-34 (2004).................................................................... 8, 13, 15, 16

U.S.S.C., *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines* 9 (2004).................................................................... 13, 15

U.S.S.C., *Quick Facts on Career Offenders* 1 (2020) .............................. 14

U.S.S.C., *Recidivism Among Federal Offenders: A Comprehensive Overview* (2016) .......................................... 13, 14, 19

U.S.S.C., *Recidivism Among Federal Violent Offenders* (2019) ..................................................................................... 12

## Statement of the Interest of the Amici and Authority to File and Statement Pursuant to F.R.A.P. Rule 29(a)(4)(E)

The Office of the Federal Public Defender represents indigent defendants charged with federal offenses in the Districts of Massachusetts, New Hampshire and Rhode Island. The decision in this case will impact many of our clients.

The Massachusetts Association of Criminal Defense Lawyers (MACDL) is an incorporated association representing more than 1,000 experienced trial and appellate lawyers who are members of the Massachusetts Bar and who devote a substantial part of their practices to criminal defense. MACDL devotes much of its energy to identifying, and attempting to avoid or correct, problems in the criminal justice system. It files amicus curiae briefs in cases, like this one, raising questions of importance to the administration of justice.

As set forth in the motion for leave to file, both parties have consented to the filing of this memorandum.

The brief was authored in whole by amici, who are not counsel for any party, and no party or person other than amici, its members, or counsel contributed money for the brief.

## Introduction

*Amici* write to explain the "exceptional importance" of the issues in this case by discussing the impact of the career offender guideline on those to whom it is applied and within the framework of federal sentencing.[1] Of the most extreme punishments under federal law, the career offender guideline has been applied the most broadly: career offenders comprise just 3% of sentenced defendants but over 11% of the federal prison population. The career offender guideline's failure to advance the purposes of sentencing has long been recognized, as has its unwarranted disparate effect on Black defendants.

Given the harshness of its application, the breadth of its reach, and its racially disparate impact, the correct interpretation of the career offender guideline is particularly important. Simply put, this Court should read the guideline as written, so as not to expand its already-broad scope. This Court should sit en banc to correct what two of the judges on the panel recognized to be a mistake: allowing the Sentencing

---

[1] Fed. R. App. P. 35(a)(2).

Commission to expand this problematic guideline through the use of commentary, which is not subject to Congressional review and approval.

## Argument

### A. The Career Offender Guideline Has Long Been Recognized as Problematic.

The career offender guideline is among the most problematic guidelines in the federal system. As early as 2004, the Sentencing Commission identified the career offender guideline as a source of significant, unwarranted adverse impact on Black defendants.[2] And as recently as 2016, the Commission recommended that Congress amend its directive to the Commission to address the guideline's most extreme problems.[3]

Because the current career offender guideline is overly severe, does not advance the purposes of sentencing, and has a racially disparate impact, it is vital that the Commission not be allowed to

---

[2] U.S.S.C., *Fifteen Years of Guidelines Sentencing: An Assessment of How Well the Federal Criminal Justice System is Achieving the Goals of Sentencing Reform* 131-34 (2004) ("Fifteen Year Review").

[3] U.S.S.C., *Report to Congress: Career Offender Sentencing Enhancements* 43-44 (2016) ("Career Offender Report").

unilaterally expand the guideline beyond what the text requires.

**1. The impact of a career offender determination is severe.**

The sentencing ranges produced by the career offender guideline are harsh. Congress mandated that the Commission "specify a sentence to a term of imprisonment at or near the maximum term authorized for categories of defendants" convicted for at least a third time of a "felony that is" a "crime of violence" or "an offense described in" particular federal drug trafficking statutes (not including conspiracy and attempt statutes).[4] The Commission implemented the directive by tying the offense level to the statutory maximum for the offense of conviction and automatically placing the defendant in Criminal History Category (CHC) VI.[5]

Several additional features make the career offender guideline particularly harsh. Although mitigating-role reductions alleviate some of the outsized influence of drug quantity on sentencing,[6] those

[4] 28 U.S.C. §994(h).

[5] U.S.S.G. §4B1.1(a)-(b).

[6] U.S.S.G. §§3B1.2, 2D1.1(a)(5).

categorized as career offenders are excluded wholesale from such reductions.[7] In addition, "departures" for overstatement of criminal history or likelihood of reoffending are limited for career offenders—and only for career offenders—to just one criminal history category.[8]

The career offender designation drastically increases individuals' guideline ranges. The median low-end guideline range for career offenders in FY2019 was 188 months, 2.7 times the non-career offender median of 70 months.[9] This impact persists for the 76.8% designated as career offenders because of a drug conviction.[10]

The sentencing ranges produced by the career offender guideline are higher than necessary to meet the statutory purposes of sentencing. In FY2019, district judges imposed sentences within the guideline

[7] U.S.S.G. §4B1.1(b).

[8] U.S.S.G. §4A1.3(b)(3)(A).

[9] U.S.S.C., Individual Datafiles FY2019 (drawing from the eight major offense types found among career offenders: murder, sexual abuse, assault, robbery, arson, drug trafficking, firearms, racketeering/extortion).

[10] U.S.S.C., Individual Datafiles FY2019.

range on just 22.6% of those deemed career offenders.[11] Despite the high level of below-range sentences, the sentences imposed nevertheless reflect that the guideline continues to "exert controlling influence on the sentence that the court will impose," by "anchoring" the sentence to the higher guideline range.[12]

The career offender guideline had such an "anchoring" effect here, as the district judge acknowledged.[13] The judge calculated both the career offender guideline (151-188 months) and the non-career offender guideline (37-46 months).[14] Working from the career offender range, the judge imposed a below-guideline sentence of 108 months. She stated clearly that the sentence was driven by her determination that Mr. Lewis qualified as a career offender and that, if he were not a career offender, she would not impose the same sentence.[15] This is

---

[11] *Id.*

[12] *Peugh v. United States*, 569 U.S. 530, 545, 549 (2013).

[13] *Id.* at 549; Add. 30 ("I am using career offender as an anchor").

[14] Add. 29-30.

[15] Add. 30, 59.

unsurprising. The variance notwithstanding, the sentence the court imposed was still almost three times the low end of the non-career offender guideline range. As Mr. Lewis's guideline range moved up, his "sentence[ ] move[d] with it."[16]

This case is not an outlier. Despite the high level of non-guideline sentences for career offenders, courts still impose far higher sentences where they have determined the defendant is a career offender. In FY2019, across the eight major offense types, the median sentence *imposed* was 141 months for career offenders, and 54 months for non-career offenders.[17] That is, even accounting for departures and variances, career offenders' sentences were more than *2.6 times* non-career offenders' sentences.

**2. The severity of the career offender guideline does not advance the purposes of sentencing.**

As a result of the extreme impact of the career offender guideline on sentence length, those deemed career offenders comprise over 11% of

---

[16] *Peugh*, 569 U.S. at 544.

[17] U.S.S.C., Individual Datafiles FY2019.

the federal prison population, even though they are only about 3% of defendants sentenced each year.[18] That severity is not necessary to protect the public or advance any other purpose of sentencing.

Sentencing Commission research over several decades has documented that the offenses singled out by the career offender guideline—both drug-related and violent—do a poor job of identifying defendants at the greatest risk of recidivism.[19] Defendants classified as career offenders are automatically placed in CHC VI. But those classified as career offenders and armed career criminals actually have *lower* rates of recidivism than defendants in CHC IV, V, and VI, based on point calculations under U.S.S.G. §4A1.2. These individuals receive sentences for CHC VI, even though their recidivism rate as a whole

---

[18] *Career Offender Report*, at 2.

[19] *Fifteen Year Review* at 134; U.S.S.C., *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines* 9 (2004) ("Measuring Recidivism"); U.S.S.C., *Recidivism Among Federal Offenders: A Comprehensive Overview* 19 figs. 7A & 7B (2016) ("Recidivism Report"); U.S.S.C., *Recidivism Among Federal Violent Offenders* 14 fig. 2.9, 36 fig. 4.7 (2019) ("Recidivism: Violent Offenses").

(69.5%) falls between those placed in CHC III (63.3%) and IV (74.7%).[20]

The over-prediction is worse for defendants, like Mr. Lewis, who are deemed career offenders based on drug offenses. The Commission's most recent data show that those classified as career offenders and armed career criminals on the basis of non-violent offenses had a recidivism rate (50%) that closely approximated defendants in CHC II (49.4%).[21]

Moreover, many career offenders not only are assigned to the highest criminal history category, but also receive an increase in offense level tied to the statutory maximum.[22] Because the offense level *prior* to this enhancement is designed to reflect the seriousness of the instant offense,[23] this increase can be justified only for the purpose of incapacitation. Yet, the Commission has found "no apparent

---

[20] *Recidivism Report*, at 19 figs. 7A & 7B.

[21] *Recidivism: Violent Offenses*, at 14 fig. 2.9, 36 fig. 4.7.

[22] U.S.S.C., *Quick Facts on Career Offenders* 1 (2020).

[23] Paul J. Hofer & Mark H. Allenbaugh, *The Reason Behind the Rules: Finding and Using the Philosophy of the Federal Sentencing Guidelines*, 40 Am. Crim. L. Rev. 19, 49-50 (2003).

relationship" between offense levels and recidivism risk.[24]

Simply put, the extreme severity of the career offender guideline is not justified to protect the public. Its application does not remotely track recidivism rates, the guideline does not serve a public safety purpose, and no other justification has ever been offered by Congress or the Commission.

### 3. The career offender guideline has an unwarranted adverse impact on Black defendants.

In the late 1980s, a wide and enduring gap opened between the sentences of Black defendants and those of other races.[25] Some of that gap resulted from new statutes and guidelines, including the career offender guideline, "that have a disproportionate impact on" Black defendants but "serve no clear sentencing purpose."[26] As the Sentencing Commission itself has said, "if a sentencing rule has a significant adverse impact and there is insufficient evidence that the

---

24 *Measuring Recidivism*, at 13.

25 *Fifteen Year Review*, at 115.

26 *Id.* at 131.

rule is needed to achieve a statutory purpose of sentencing, then the rule might be considered unfair toward the affected group."[27] In its *Fifteen Year Review*, the Commission identified the career offender guideline—along with the since-discarded 100-to-1 quantity ratio between powder and crack cocaine—as a source of significant and unwarranted adverse impact on Black defendants.[28]

The disproportionate impact of the career offender guideline on Black defendants arises in large part from disparate state and local policing practices. In Massachusetts, the Supreme Judicial Court has cited Boston Police Department and ACLU reports documenting that Black men in the city of Boston were more likely to be targeted for police-civilian encounters such as stops, frisks, searches, observations and interrogations.[29] Despite data indicating Blacks use and sell illicit drugs at about the same rate as Whites,[30] Blacks make up nearly 23%

---

[27] *Id.* at 114.

[28] *Id.* at 131-34.

[29] *Com. v. Warren,* 58 N.E.3d 333, 342 & nn. 13-16 (Mass. 2016).

[30] Natl. Res. Council, *The Growth of Incarceration in the United States, Exploring Causes and Consequences* 60 (2014).

of those sentenced for drug offenses in Massachusetts,[31] although they make up only 9% of the population of Massachusetts.[32]

The racial disparity in the application of the career offender guideline endured even after the reduction of the 100-to-1 disparity between powder and crack cocaine.[33] In FY2019, 61.4% of the individuals classified as career offenders were Black—nearly three times their share of the overall federal defendant population.[34] Because the career offender guideline sweeps in far more defendants than necessary to protect the public or advance any other purpose of sentencing, this adverse impact is rightly considered a form of racial discrimination.[35]

---

[31] Mass. Sent'g Comm'n, *Survey of Superior Court Sentencing Practices FY2018* 42 tbl. 32 (2019), https://bit.ly/2DkSZr1 .

[32] U.S. Census Bureau, *QuickFacts Massachusetts*, https://www.census.gov/quickfacts/MA (last visited July 7, 2020).

[33] Fair Sentencing Act of 2010, Pub. L. No. 111-220, §2, 124 Stat. 2372, 2372 (2010).

[34] U.S.S.C., Individual Datafiles FY2019. Among all FY2019 individuals for whom the Commission received complete information, 20.7% were Black, while 61.4% of those deemed career offenders were Black.

[35] Eric P. Baumer, *Reassessing and Redirecting Research on Race and*

### B. The Sentencing Commission Itself Has Called for Reform.

The Sentencing Commission has long recognized this guideline is in need of reform. Most recently, in 2016, the Commission recommended that Congress amend 28 U.S.C. §994(h) to no longer include defendants who qualify as career offenders based solely on drug offenses.[36] The guideline is especially problematic in drug cases not only because the automatic application of CHC VI vastly over-predicts the recidivism rate of these defendants, but also because the statutory maxima, to which the guideline offense levels are tied, are high for federal drug offenses. According to the Commission, excluding drug convictions from the career offender directive would help ensure that federal sentences better account for the severity of a person's prior records, protect the public, and avoid undue severity for certain less culpable individuals.[37]

---

*Sentencing*, 30 Just. Q. 231, 247-48 (2013).

[36] *Career Offender Report*, at 43-44.

[37] *Id.* at 3, 43-44. Although the Commission did not make the same recommendation for defendants who qualify as career offenders based on crimes of violence—which would render the career offender category a null set—the Commission's data support excluding these defendants

### C. It is Exceptionally Important that Courts Not Interpret the Career Offender Guideline More Broadly than Required.

The Commission has called on Congress for legislation to limit the reach of the career offender guideline. Especially given the problematic nature of the guideline—its harsh penalty, its failure to advance the purposes of sentencing, its adverse impact on Black defendants—it is important that courts apply the guideline only as written.

The Commission's attempt to expand the career offender guideline under the guise of interpretation must be rejected. As mentioned above, the congressional directive that career offenders be sentenced "at or near" the statutory maximum applied only to certain, enumerated offenses of conviction.[38] Although substantive drug offenses under section 401 of the Controlled Substance Act were included in this directive, inchoate offenses under section 406 were not.[39] "[T]he

---

as well. As noted above, the recidivism rate for career offenders and armed career criminals categorized on the basis of violent offenses also falls well below those for other CHC VI defendants. *See Recidivism: Violent Offenses*, at 14 fig. 2.9, 36 fig. 4.7.

[38] 28 U.S.C. §994(h).

[39] *Id.*

precision with which §994(h) includes certain drug offenses but excludes others indicates that the omission of §846 was no oversight."[40]

This Court has held that the Commission did not contravene §994(h)'s statutory mandate by including convictions under §846.[41] But adding inchoate offenses through the use of commentary, rather than through formal guideline amendment, was improper and this Court should now so hold.

For the persuasive reasons argued by Appellant, *amici* urge this Court to grant rehearing en banc and to hold that the Commission's commentary that adds to the already over-inclusive career offender guideline is not entitled to deference, is contrary to the guideline it purports to interpret, and must therefore be rejected. No doubt, it is always important for courts to employ proper tools of Constitutional and statutory interpretation. But the importance of avoiding interpreting *this* guideline any more broadly than required is heightened by its impact on those to whom it is applied and our larger

---

[40] *United States v. Knox*, 573 F.3d 441, 448 (7th Cir. 2009).

[41] *United States v. Piper*, 35 F.3d 611, 617-18 (1st Cir. 1994).

federal sentencing system. It is, therefore, exceptionally important to interpret this guideline as it is written.

Respectfully Submitted,

OFFICE OF THE FEDERAL PUBLIC DEFENDER, DISTRICTS OF MASSACHUSETTS, NEW HAMPSHIRE and RHODE ISLAND;

MASSACHUSETTS ASSOCIATION OF CRIMINAL DEFENSE LAWYERS;

By:

*/s/Judith H. Mizner*
Judith H. Mizner, AFPD (No. 11056)
Federal Defender Office
51 Sleeper St., 5th Floor
Boston, MA 02210
(617) 223-8061

*/s/ Davina T. Chen*
Davina T. Chen (No. 1195083)
National Sentencing Resource Counsel
321 East Second Street
Los Angeles, CA 90012
(213) 393-3079

Dated: July 10, 2020

## Certificate of Compliance with Type-Volume Limit, Type-Face Requirements, and Type-Style Requirements

I hereby certify that

1. This document complies with the type-volume limitations of Fed. R. App. P. 29(b)4) and 32(g)(1) because, excluding the parts of the document exempted by the Fed.R.App. P. 32(f), this document contains 2,576 words.

2. This document complies with the typeface requirement of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because the document has been prepared in a proportionally spaced typeface using Word 2016 in 14-point Century. Schoolbook

*/s/Judith H. Mizner*

## Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on July 10, 2020.

*/s/Judith H. Mizner*